Glenn W. TURNER and Alice A. Turner, Petitioners-Appellants, Cross-Appellees,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee, Cross-Appellant.

No. 85–3963.

United States Court of Appeals, Eleventh Circuit.

March 16, 1987.

Roger V. Barth, Paul S. Richter, Washington, D.C., for petitioners-appellants, cross-appellees.

Michael L. Paup, Chief Roger M. Olsen, Acting Asst. Atty. Gen., Gilbert S. Rothenberg, Francis M. Allegra, U.S. Dept. of

Justice, Tax Div., Appellate Section, Washington, D.C., for respondent-appellee, cross-appellant.

Before TJOFLAT and EDMONDSON, Circuit Judges, and EATON *, Senior District Judge.

EATON, Senior District Judge:

This is an appeal by Glenn W. Turner and Alice A. Turner, and a cross-appeal by the Commissioner of Internal Revenue, from a decision by the United States Tax Court in an "unreported income" case.[1]

Glenn W. Turner (hereinafter referred to as Turner) was the sole stockholder of Koscot Interplanetary Corporation (Koscot) during the years in question. Intercontinental Rating Corporation (Intercontinental) and American Line Cosmetics, Inc., (American Line) were subsidiary corporations of Koscot.

During 1969, 1970 and 1971, Turner pursued what the tax court described as a "frenetic business travel schedule," merchandising cosmetics, cosmetics distributorships, and himself. During those years, substantial amounts of Koscot funds were advanced to Turner to pay certain personal expenses for Turner and his family. Koscot's accounting department kept detailed records of these advances made to Turner in Koscot account number 11–425, designated as "advances" to Turner. The accounting department tracked advances to Turner by entering debits to account number 11–425. Periodically, the Koscot accounting department made adjusting entries to the advance account to reflect changes in the accounting treatment of items initially regarded as personal expenses. Offsetting credits were entered to account number 11–425 and those amounts were redebited to other business expense accounts when Koscot's tax attorney or accounting department made a determination to regard Turner's expenditures as Koscot business expenses, rather than personal expenses.

In 1971, Turner received similar advances from the two subsidiary corporations.

The year-end (fiscal) balances of Turner's Koscot number 11–425 advance account were reported as "loans to stockholders" on the balance sheet portion of Koscot's corporate federal income tax returns. Similarly, the year-end balances of Turner's advance account were described as "due from officers" on Koscot's financial statements.

Turner and Alice A. Turner reported income in the form of wages. They did not report as income any amounts advanced to Turner and reflected in his Koscot number 11–425 "advance account," nor did they report as income amounts advanced to Turner by the two subsidiary corporations.

The Internal Revenue Service audited the Turners' joint returns for 1969, 1970, and 1971. As a result, the Commissioner determined that Turner had received constructive dividends and not loans from Koscot and from the two corporate subsidiaries. The Commissioner's deficiency notice indicated the following:

| Taxable Year | Deficiency |
|---|---|
| 1969 | $264,792.97 |
| 1970 | 123,278.81 |
| 1971 | 496,671.36 |

Taxpayers timely petitioned the United States Tax Court seeking a redetermination of deficiencies in income tax asserted by the Commissioner. Following trial, the tax court filed its detailed memorandum, findings of fact and opinion [unofficially reported at 49 T.C.M. (CCH) 1107 (1985)], and entered its decision on September 26, 1985.

The tax court's decision upheld the following deficiencies:

| Taxable Year | Deficiency |
|---|---|
| 1969 | $44,297.64 |
| 1970 | 19,129.86 |
| 1971 | 8,864.40 |

---

* Honorable Joe Eaton, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

1. Alice A. Turner is a party to these proceedings because she filed joint income tax returns with Glenn W. Turner.

The tax court determined that advances made to or on behalf of Turner by his wholly-owned corporation, Koscot, and the 1971 "credits" to Koscot's advance account, were loans and not constructive dividends. The tax court upheld a portion of the Commissioner's deficiency notice, finding that certain amounts "credited" to Turner's advance account number 11–425 in 1969 and 1970, and the Intercontinental and American Line subsidiary advances, were income in the form of constructive dividends and not loans. In sum, the deficiencies upheld by the tax court total less than one-tenth of those initially determined by the Commissioner.

Taking the offensive, the Taxpayers were the first to file notice of appeal. The Commissioner, in turn, filed his cross-appeal.[2]

## THE TAXPAYER'S APPEAL

First, the Taxpayers employ an unprecedented approach in seeking to have this court, on appeal, nullify the presumption of correctness afforded the Commissioner's deficiency determinations made in reference to the 1969 and 1970 "credits" to Koscot advance account and to the advances by the subsidiary corporations. They stress the "substantial inroads" made by the tax court on the Commissioner's determinations and argue that an overall reduction by the tax court of over 90% of the Commissioner's determinations of deficiencies implies substantial error in the determinations, thereby nullifying the presumption of correctness, causing the burden of going forward with the evidence to shift to the Commissioner.[3]

The Taxpayers neither sought nor obtained from the tax court a ruling on the "presumption of correctness" issue presented here. They necessarily rely

upon the "substantial inroads" made by the tax court on the overall deficiency determinations as the basis for their novel argument before this court.

Perhaps that should end the discussion. We do observe, however, that nowhere in this case was the Commissioner's *method* of determining the tax deficiencies faulted. The factual foundations for the Commissioner's determinations of the amount of deficiencies were the corporate records of Koscot and the subsidiary corporations. The tax court found the Commissioner to have been partially in error regarding the intent of the parties to the transactions, but the amounts of money involved were not found to have been arbitrarily determined by the Commissioner.

■ The Taxpayers' argument, in essence, is that because they prevailed in the tax court on over ninety percent of the overall challenge, the presumption of correctness shielding the remaining percent must vanish. That argument is not rational when one seeks to apply it to findings of intent on separate transactions. The stakes in this action were not placed on a "winner take all" basis.

### The 1969 and 1970 "Credits" to Koscot "Advance Account"

We now consider Taxpayers' alternative position that the tax court's determination that the Taxpayers failed to carry their burden of proof in reference to the 1967 and 1970 "credits" to the Koscot "advance account" is inconsistent with that court's finding in regard to the Koscot "advance account" and, therefore, is clearly erroneous.

The Taxpayers stress that the tax court specifically found that Turner was a credible witness; that his unequivocal testimony

---

**2.** The cross-appeal challenges the rulings adverse to the Commissioner regarding the Koscot advances. The ruling regarding the 1971 "credits" to the Koscot advance account is not appealed.

**3.** The Taxpayers attribute their "substantial error" concept to *Cohen v. C.I.R.,* 266 F.2d 5 (9th Cir.1959), a case to which this court referred

with approval, by way of dicta, in *Gatlin v. C.I.R.,* 754 F.2d 921, 923 (11th Cir.1985).

*Cohen,* and cases that follow, teach that a court will disregard the presumption of correctness only when the Commissioner's *method* of determining the *amount* of deficiency in income is arbitrary and invalid. The rationale for the rule is that a taxpayer should not bear the burden of proving a negative.

that he intended to repay all advances from Koscot, together with the bookkeeping entries and the treatment reflected on the Koscot corporate income tax returns, should have been sufficient to sustain the Taxpayers' burden of proof.[4]

The Taxpayers' argument overlooks specific findings made by the tax court as to the 1969 and 1970 "credits." The tax court found no evidence that the Taxpayers regarded as *bona fide* loans the amounts credited to the Koscot advance account and redebited to other business expense accounts in 1969 and 1970.

Recognizing that there was sufficient evidence to establish an existing agreement between Turner and Koscot that Turner would repay the advances on the Koscot account, the tax court, nevertheless, found no evidence that either of the Taxpayers or Koscot ever agreed that any of the amounts "credited" and "redebited" were *bona fide* loans. "Indeed," the tax court wrote, "Glenn's and Koscot's intent that such amounts would be loans is implicitly negated by Koscot's decision to redebit the items to business expenses and *Glenn's acquiescence* in the redebiting." (Emphasis added).

### Advances by the Subsidiary Corporations

The Taxpayers reassert the burden of proof argument made in reference to the 1969 and 1970 "credits" in their challenge to the finding regarding advances from the subsidiary corporations. They point out that Turner unequivocally testified that he intended to repay all advances from Koscot and "the other companies," and that his testimony was consistent with and corroborated by the documentary evidence.

The tax court found no objective economic indicia of debt in connection with the advances by the subsidiary corporations. It found that there was "an almost complete lack of evidence" in favor of Taxpayers on the issue. As well, the tax court wrote that the characterization of the advances by the subsidiary corporations could not "ride the coattails" of those Koscot advances identified to be *bona fide* loans. Notably, the tax court found that a mere bookkeeping entry together with a suggested inference to be drawn from the "general tenor" of Turner's testimony were insufficient to prove the requisite intent necessary to establish the subsidiary corporations' advances as *bona fide* loans which Turner aspired to repay and which the subsidiary corporations intended to collect.

The tax court did not apply erroneous legal standards. Its findings of fact are not clearly erroneous.

### THE COMMISSIONER'S APPEAL

The Commissioner argues that the tax court erred in holding that the advances from Koscot were genuine loans and not constructive dividends. Specifically, the Commissioner takes the position that the tax court ignored the warnings of this court and others regarding the trappings of closely-held corporations and based its findings solely on Turner's self-serving testimony and the books of the corporation he controlled.

The Commissioner initially proposes that the tax court applied an improper legal standard in arriving at its finding and,

---

4. Taxpayers complain that the tax court, by observing in its findings that "without some evidence from the petitioners concerning the purpose for which the expenditures were made, we have no basis for deciding whether they were business or personal expenses," erroneously imposed upon them the burden of proving the detailed basis for each expenditure in question. They cite *Helgesen Properties v. Commissioner,* 47 T.C.M. (CCH) 771 (1983) for the proposition that in view of Turner's limited formal education and the fact that he relied upon others to do the corporate bookkeeping, the tax court labored under an erroneous legal standard when it imposed on the Turner's the obligation to provide the evidence the tax court judge found lacking. The *Helgesen* holding was dependent neither upon the lack of taxpayer's formal education, nor upon the fact that he relied on others to do the corporate bookkeeping. Rather, the tax court considered several factors endemic to construction industry cost accounting principles in deciding whether the taxpayer intended to repay his corporation for construction done on his behalf.

therefore, erred as a matter of law. In that connection, the Commissioner reasons that the tax court's findings that the Koscot advances were loans are violative of what he labels "the analytical process" stressed by this court in *Alterman Foods v. United States*, 505 F.2d 873 (5th Cir. 1974) [hereinafter cited as *Alterman Foods I*]; that the tax court virtually ignored evidence which the *Alterman Foods I* court found to be probative; and that the evidence before the tax court was insufficient, as a matter of law, to support the ultimate conclusion reached by that court. The Commissioner stresses that most, if not all, of the reliable indicia of debt set forth in *Alterman Foods I* and *Alterman Foods v. United States*, 611 F.2d 866, 222 Ct.Cl. 218 (1979) [hereinafter cited as *Alterman Foods II*], are absent in this case. The Commissioner adds that, at the very least, a review of the relevant evidence before the tax court leads irrefutably to the "definite and firm conviction that a mistake has been committed" and that the tax court's findings are clearly erroneous.

■ The Commissioner proceeds on solid ground when he reminds us that courts should apply special scrutiny to advances made by corporations to their sole stockholders. We recognize the rule that self-serving statements of intent, absent objective economic indicia of debt, are of little avail to sole stockholders in unreported income cases. *Alterman Foods I*, 505 F.2d at 876.

■ Written evidence of debt such as consistent bookkeeping and consistent financial reporting are little more than additional declarations of intent absent any accompanying objective economic indicia of debt. *See, e.g., Alterman Foods II.* Because the parties do not deal at arm's length, a substantial showing of reliable economic indicia of debt is a necessary predicate to a finding that advances by a corporation to its sole stockholder are *bona fide* loans.

■ *Alterman Foods I* outlines several factors which certainly are worthy of consideration in cases of this nature, but no listing of possible objective economic indicia of debt could be exhaustive. No blueprint is available to be utilized in every case in constructing findings of fact. In each "unreported income" case, the fact finder must look to the circumstances surrounding the transaction. In doing so, the fact finder must look for reliable indicia of debt which indicate the intrinsic economic nature of the transaction.[5] The tax court judge has done that.

■ On appellate review, primary weight must be given to the factual findings of the tax court judge. *Commissioner v. Scottish American Investment Co.*, 323 U.S. 119, 125, 65 S.Ct. 169, 172, 89 L.Ed. 113 (1944). The tax court did not err in a rule of law and it did not apply erroneous legal standards. The findings of the tax court are supported by substantial evidence and are not clearly erroneous.

## CONCLUSION

The issues presented on appeal have been compounded by seasoned counsels' efforts to locate in the record some application by the tax court of an erroneous legal standard. No such application is demonstrated.

When all is said and done, this appeal presents questions of whether the tax court's factual findings on the intent issues are clearly erroneous.

Having found that the tax court's findings on the factual issues are not clearly erroneous,

5. We do not here attempt to outline the evidence before the tax court, but we do note that the tax court found the following facts from the record: (1) advances were made from the Koscot account to Turner "partly as a result of his frenetic business travel schedule;" (2) Turner hired a tax attorney and followed his advice on the matter of these advances; (3) the tax attorney and corporate accountants, not Turner, made the determination as to which expenditures were personal and which were business expenses; and (4) in a 1978 sworn statement in connection with a campaign for public office, Turner still listed these advances as debts. These objective factors were drawn from evidence beyond Turner's own testimony and entries in the corporate records.

We AFFIRM the tax court's decision in its entirety.