STANISLAW AND JEANETTE DRABIUK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Drabiuk v. Commissioner
Docket No. 6339-94
United States Tax Court
T.C. Memo 1995-260; 1995 Tax Ct. Memo LEXIS 261; 69 T.C.M. (CCH) 2890; June 13, 1995, Filed *261 Decisions will be entered under Rule 155. Held: Ps underreported their 1988 and 1989 gross income. Held, further, Ps are liable for additions to their 1988 and 1989 taxes for fraud under secs. 6653(b)(1) and 6663, I.R.C., respectively. Stanislaw and Jeanette Drabiuk, pro sese. For respondent: Daniel K. O'Brien. LARO
LARO
MEMORANDUM FINDINGS OF FACT AND OPINION LARO, Judge:; Stanislaw and Jeanette Drabiuk [1] petitioned the Court for a redetermination of respondent's determination set forth in her notice of deficiency issued to them on March 17, 1994. Respondent determined deficiencies in petitioners' Federal income taxes, an addition to tax, and a penalty as follows: Addition to Tax
Penalty
Year
Deficiency
Sec. 6653(b)(1)
Sec. 6663
1988
$ 6,285
$ 4,714
--  1989
26,363
-- $ 19,772
Following concessions, we must decide: (1) Whether petitioners underreported *262 their 1988 and 1989 gross income. We hold they did. (2) Whether petitioners are liable for a penalty for fraud under sections 6653(b)(1)[2] and 6663 for the 1988 and 1989 taxable years, respectively. We hold they are. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulations and attached exhibits are incorporated herein by this reference. Petitioners are husband and wife. They resided in Trenton, New Jersey, when they filed their petition. For the years in issue, petitioners filed 1988 and 1989 Forms 1040, U.S. Individual Income Tax Return, using the filing status of "Married filing joint return". Petitioners and Jeanette's parents, Wladyslaw (Walter) and Marianna (Marianna) Mania, immigrated to America from Poland in the 1970s. Stanislaw worked as an assembler until he suffered two heart attacks in the late 1970s. *263 Stanislaw was unable to obtain employment after undergoing heart surgery in 1981. Thereafter, Stanislaw began receiving disability benefits. Petitioners opened a small delicatessen, called Stanley's Grocery and Deli (the Deli), to augment Stanislaw's disability income. The Deli was located at the same address as petitioners' residence. The Deli was open 7 days a week from 7 a.m. to 8 p.m. In addition to income from the Deli, petitioners received commissions from a New Jersey Lottery Commission ticket sales machine located within the Deli. Jeanette performed bookkeeping duties for the Deli. Jeanette maintained daily records of the cash receipts and disbursements of the Deli by transcribing cash register tapes and receipts into separate journals. [3] Petitioners reported the following amounts from the Deli on their Schedules C, Profit or Loss From Business: Year
Gross Receipts
Depreciation
Net Profit
1988
$ 84,613
$ 1,612 $ 12,588
1989
76,271
1,463 13,017
The net profit reported by petitioners from the Deli includes both the commissions earned from the New Jersey Lottery Commission and profit (loss) from the Deli. Petitioners reported $ 11,945 and $ 14,363 *264 as commission income during 1988 and 1989, respectively. Petitioners reported income of $ 643 from the Deli in 1988 and a loss of $ 1,346 in 1989. Petitioners maintained a business checking account for the Deli at the New Jersey National Bank. Petitioners did not deposit all business receipts into this account. Gross deposits to this account were $ 25,255.84 and $ 35,349 during 1988 and 1989, respectively. Petitioners reported the following adjusted gross income (loss) and taxable income on their 1980 through 1989 income tax returns: Adjusted
Taxable
Year
Gross Income
Income 1980
$ (5,994)
-0- 1981
8,302 $ 3,480
1982
(1,906)
-0- 1983
3,540 515
1984
1,688 -0- 1985
4,508 1,346
1986
6,593 3,204
1987
[1] (6,915)
-0- 1988
10,594 -0- 1989
9,053 -0- *265 Petitioners also reported $ 4,738.80, $ 4,930, and $ 11,174 nontaxable Social Security benefits that they received during 1987, 1988, and 1989, respectively. From 1980 to 1988, Walter and Marianna's combined adjusted gross income totaled $ 130,231. On September 8, 1988, Stanislaw paid $ 25,041.30 in cash for a Lincoln Town Car. Stanislaw was told that a currency transaction report would be filed with the Internal Revenue Service when he purchased the automobile. [4] Thereafter, Stanislaw began purchasing cashier's checks for amounts under $ 10,000. On December 11, 1989, petitioners purchased unimproved real property in Mansfield Township, New Jersey, for $ 77,485. Petitioners made a $ 7,000 cash downpayment on the lot on August 2, 1989, and paid the balance on the date of sale. In *266 November 1988, Stanislaw purchased a cashier's check for $ 7,000 from the Bank of Mid-Jersey. Stanislaw also purchased cashier's checks during 1989 from the New Jersey National Bank: Date of Check
Amount Nov. 3, 1989
$ 7,000
Nov. 7, 1989
7,000
Nov. 8, 1989
7,000
Nov. 10, 1989
7,000
Nov. 13, 1989
7,000
Nov. 16, 1989
7,000
Nov. 29, 1989
7,000
Dec. 1, 1989
7,000
Dec. 5, 1989
7,000
Dec. 6, 1989
7,000
By purchasing cashier's checks in amounts less than $ 10,000, Stanislaw believed that he was avoiding the filing of a currency transaction report. [5]
Respondent reconstructed petitioners' 1988 and 1989 income using the cash expenditures method. She determined that petitioners had unreported income of $ 5,763 and $ 66,533 for 1988 and 1989, respectively. [6] Respondent argues *267 that the $ 72,296 in issue represents unreported income from the Deli. OPINION Issue 1. Underreported Income
Respondent's determinations are presumed to be correct; petitioners have the burden of showing they are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Respondent used the cash expenditures method to reconstruct petitioners' income for 1988 and 1989. The use of the cash expenditures method of computing income is a well-established method of determining a taxpayer's unreported income. United States v. Johnson, 319 U.S. 503, 517 (1943); Hoffman v. Commissioner, 298 F.2d 784, 786 (3d Cir. 1962), *268 affg. in part T.C. Memo. 1960-160. The cash expenditures method assumes that the amount by which a taxpayer's cash expenditures during a taxable period exceed his known sources of income for that period is taxable income, unless the taxpayer can show that the expenditures were made from some nontaxable source of funds. DeVenney v. Commissioner, 85 T.C. 927, 930 (1985). The relevant inquiry is whether any expenditures in excess of reported income can be attributed to assets available at the beginning of the relevant period or to nontaxable receipts, such as loans, gifts, or inheritances. Petzoldt v. Commissioner, 92 T.C. 661, 695 (1989). Petitioners contend that the excess application is attributable to (1) cash on hand at the beginning of the years in issue; and (2) loans from family members. Cash on Hand
Petitioners contend that they had approximately $ 24,000 of cash on hand at the beginning of 1988. This $ 24,000, according to petitioners, consists of approximately $ 8,000 saved by Jeanette, approximately $ 8,000 saved by Stanislaw, approximately $ 7,000 in excess lottery funds, *269 and $ 1,000 in change. Respondent disagrees and contends that petitioners had no more than $ 1,000 cash on hand at the beginning of 1988. Respondent bases her contention on records prepared during her audit and on her analysis of petitioners' lottery fund expenditures. Respondent argues that petitioners lacked the capacity to have accumulated more than $ 1,000 in savings prior to 1988. Respondent also argues the lottery fund analysis demonstrates that petitioners did not require or maintain $ 7,000 to $ 8,000 cash on hand in order to pay out winning tickets when the week's winning payments exceeded the week's revenues. Therefore, respondent concludes, petitioners do not meet their burden of proving that higher quantities of cash were on hand at the beginning of 1988. Based upon our careful review of the record, we agree with respondent. Petitioners rely mainly on their testimony to support their positions herein. Although a taxpayer's credible, uncontradicted testimony can be sufficient to establish that the Commissioner's determination is erroneous, Demkowicz v. Commissioner, 551 F.2d 929, 931-932 (3d Cir. 1977), revg. T.C. Memo. 1975-278; *270 see also Diaz v. Commissioner, 58 T.C. 560, 565 (1972), we are not bound to accept a taxpayer's uncontradicted testimony if we find it to be improbable, unreasonable, or questionable, Demkowicz v. Commissioner, supra at 931. Applying these principles to the case at bar, we find that petitioners' contentions are improbable, unconvincing, and questionable. During the times leading up to the years in issue, petitioners' adjusted gross income was not sufficient for them to have accumulated the amount of money they claim to have saved. Even if we were to include the $ 10,000 error made by petitioners' tax preparer during 1987, petitioners' adjusted gross income for the 1980 to 1987 taxable years aggregates only $ 19,816. While we recognize that petitioners also received nontaxable disability income during these years, based upon the record before us, we do not believe it is likely that petitioners saved $ 8,000 each with such limited income. With respect to petitioners' contention that they maintained a $ 7,000 surplus for lottery expenses, petitioners provided no records to substantiate this claim. Further, an analysis *271 of petitioners' weekly lottery reports indicates that such a surplus was not necessary because petitioners' weekly intake normally exceeded the payout made to winners. On the few occasions when the payout exceeded petitioners' intake, the New Jersey Lottery Commission electronically deposited the out-of-pocket payments made by petitioners. Accordingly, we find that petitioners have not met their burden of disproving respondent's determination with respect to the amount of cash on hand at the beginning of 1988, and we sustain respondent's determination with respect thereto. Loans From Family Members
Petitioners also contend that they received two substantial cash loans from Jeanette's parents in the years in issue, totaling $ 52,000, and a $ 7,000 loan from Jeanette's brother, Bogdan Mania. With respect to the alleged loan from Bogdan, the only evidence offered by petitioners was Stanislaw's testimony. Bogdan did not testify, nor did petitioners present any credible documentary evidence with respect to this loan. Self-serving statements, without other collaborating documentation, generally are not reliable indicia of the creation of a loan. Turner v. Commissioner, 812 F.2d 650, 654 (11th Cir. 1987), *272 affg. T.C. Memo. 1985-159. In light of the totality of other evidence, [7] we think it unlikely that the subject loan was ever made to petitioners from Bogdan, and accordingly, find that petitioners failed to carry their burden of proof. With respect to the alleged loans received from Jeanette's parents, respondent's agent, Claire Biddulph (Biddulph), testified that she asked Jeanette a series of questions relating to loans received during the years in issue. At their meeting on January 16, 1991, Jeanette told Biddulph that she had received no large cash loans from her parents during 1988 and 1989. After Biddulph told Jeanette that the Internal Revenue Service had received currency transaction reports in the amounts of $ 25,000 and $ 28,000 during 1988 *273 and 1989, respectively, Jeanette recanted and asserted that she had borrowed $ 52,000 from her parents during the relevant years. At trial, petitioners offered the corroborating testimony of Jeanette's parents. Marianna testified that she lent petitioners $ 52,000 during the years in issue. Marianna claims that these loans were made on two separate occasions in the amounts of $ 25,000 and $ 27,000. Marianna's testimony was vague. The loans were not documented. Further, no interest was due on the loans. The alleged loans were made in cash, and were made from funds that Jeanette's parents claimed they had at their home. The testimony of Walter was equally vague. Although Walter testified that he lent petitioners $ 52,000 during the years in issue, he provided no support for such loans. Viewing the record as a whole, we find it improbable and unconvincing that Jeanette's parents provided the funds as claimed. The record indicates that Jeanette's parents had a combined adjusted gross income of $ 130,231 from 1980 through 1988. Petitioners pointed to no sources from which Jeanette's parents could have obtained $ 52,000 in cash. Petitioners offered no corroborating evidence *274 other than the vague testimony of Jeanette's parents. We are not required to accept blindly testimony which patently appears to be "highly improbable or manifestly unreasonable". Carmack v. Commissioner, 183 F.2d 1, 2 (5th Cir. 1950), affg. a Memorandum Opinion of this Court. The record as a whole contradicts the testimony of both Stanislaw and Jeanette's parents. Accordingly, petitioners have not sustained their burden of proving that $ 52,000 was received from Jeanette's parents as loans during 1988 and 1989. Issue 2. Penalty for Fraud
With respect to her allegation of fraud, respondent bears the burden of proving by clear and convincing evidence that petitioners are liable for the penalty for fraud. Sec. 7454(a); Rule 142(b); Toussaint v. Commissioner, 743 F.2d 309, 312 (5th Cir. 1984), affg. T.C. Memo. 1984-25; Wright v. Commissioner, 84 T.C. 636, 639 (1985). Respondent must meet this burden through affirmative evidence because fraud is never imputed or presumed. Toussaint v. Commissioner, supra at 312; Beaver v. Commissioner, 55 T.C. 85, 92 (1970). *275 The existence of fraud is a question of fact to be resolved from the entire record. Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Petitioners' entire course of conduct can be indicative of fraud. Stone v. Commissioner, 56 T.C. 213, 224 (1971); Otsuki v. Commissioner, 53 T.C. 96, 105-106 (1969). To satisfy her burden of proof, respondent must show two things. First, respondent must prove that an underpayment exists. Where, as here, respondent has prevailed on the issue of the existence of a deficiency by virtue of petitioners' failure to carry their burden of proof, respondent cannot rely on that failure to sustain her burden of proving fraud. Parks v. Commissioner, 94 T.C. 654, 660-661 (1990); Petzoldt v. Commissioner, 92 T.C. at 700. We must be careful in such cases not to bootstrap a finding of fraud upon a taxpayer's failure to prove the Commissioner's deficiency determination erroneous. Drieborg v. Commissioner, 225 F.2d 216, 218 (6th Cir. 1955), *276 affg. in part a Memorandum Opinion of this Court. Second, respondent must show that petitioners intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968); DiLeo v. Commissioner, 96 T.C. 858, 874 (1991), affd. 959 F.2d 16 (2d Cir. 1992); Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). The Commissioner can satisfy her burden of proving the first prong of the fraud test; i.e., an underpayment, when the allegations of fraud are intertwined with unreported and indirectly reconstructed income in one of two ways. The Commissioner may prove an underpayment by proving a likely source of the unreported income. Holland v. United States, 348 U.S. 121 (1954); Parks v. Commissioner, supra at 661. Alternatively, where the taxpayer alleges a nontaxable source, the Commissioner may satisfy her burden by disproving the nontaxable source so alleged. United States v. Massei, 355 U.S. 595 (1958); *277 Parks v. Commissioner, supra.
We find that respondent has disproved the nontaxable sources alleged by petitioners. Petitioners' allegations of cash savings and loans from family members are implausible and incredible. Similar to the taxpayer in Parks v. Commissioner, supra, Jeanette originally told Biddulph that she received no significant loans during those years. It was only after Biddulph told Jeanette that the Internal Revenue Service had received currency transaction reports in the amounts of $ 25,000 and $ 28,000 during 1988 and 1989, respectively, that Jeanette recanted and asserted that she had borrowed $ 52,000 from her parents during the relevant years. We find the fact that the alleged loans were just under the amounts contained in the currency transaction reports to be significant. Further, Jeanette's parents' testimony was vague and incredible. We find it implausible for Jeanette's parents to have accumulated such a cash hoard given the resources available to them. We hold that respondent has met her burden with respect to the first prong of the fraud test. [8]
*278 With respect to the second prong of the fraud test; i.e., that petitioners had the requisite fraudulent intent, fraud may be proved by circumstantial evidence because fraud can rarely be established by direct proof of the taxpayer's intention. Rowlee v. Commissioner, supra at 1123. Courts have developed various factors or "badges" which tend to establish fraud. The "badges of fraud", which we consider to be nonexclusive, include: (1) Understating income, (2) maintaining inadequate records, (3) failing to file tax returns, (4) giving implausible or inconsistent explanations of behavior, (5) concealing assets, (6) failing to cooperate with tax authorities, (7) engaging in illegal activities, (8) attempting to conceal activities, (9) dealing in cash, and (10) failing to make estimated tax payments. Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Clayton v. Commissioner, 102 T.C. 632, 647 (1994). Viewing the record as a whole, we are satisfied that respondent has met her burden of proving fraud. Among other things, *279 we note that petitioners: (1) Intentionally understated their income, (2) provided inadequate records to their tax return preparer and to respondent, (3) gave implausible and inconsistent explanations of behavior, (4) had dealings in cash, and (5) attempted to conceal their cash dealings by Stanislaw's purchasing cashier's checks in amounts which would avoid the filing of currency transaction reports. See Parks v. Commissioner, supra at 665. Further, we find implausible and unconvincing Stanislaw's explanation that he purchased the cashier's checks in amounts under $ 10,000 because he wanted to avoid the risk of carrying very large amounts of cash to the bank, and because he liked the number seven. The facts and circumstances of this case lead us to conclude that petitioners intentionally failed to report cash income in 1988 and 1989 in an effort to conceal that income. Thus, we sustain respondent on this issue. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. Hereinafter, we separately refer to Stanislaw and Jeanette Drabiuk by their first names and collectively refer to them as petitioners.↩
2. Section references are to the Internal Revenue Code in effect for the years in issue, and Rule references are to the Tax Court Rules of Practice and Procedure.↩
3. Jeanette did not provide the cash register tapes to her tax return preparer or respondent.↩
1. Petitioners' tax preparers erred in computing the Deli's cost of purchases. As a result, petitioners income was understated by $ 10,000. This understatement is not before the Court.↩
4. Form 8300, Report of Cash Payments Over $ 10,000 Received in a Trade or Business (currency transaction reports), are prepared when customers conduct single transactions with banking institutions in amounts of $ 10,000 or greater.↩
5. Stanislaw claims that he purchased the cashier's checks in $ 7,000 denominations because (1) he wanted to avoid the risk of carrying large amounts of cash to the bank because of his health; and (2) he liked the number seven.↩
6. In her notice of deficiency, respondent determined that petitioners had unreported income in the amounts of $ 8,200 and $ 70,690. Respondent subsequently reduced the amount of unreported income to $ 5,763 and $ 66,533. We view this reduction as a concession by respondent and hold accordingly.↩
7. In particular, we note that Marianna testified that she lent her some money during 1988 or 1989. We are not persuaded that Bogdan would lend money to petitioners while being in the position of having to borrow money from his parents.↩
8. Respondent also alleges that the record shows a likely source of unreported income; i.e., unreported receipts from the Deli. Because we have concluded that respondent has met her burden in that she has disproved the nontaxable source alleged by petitioners, we need not address this argument.↩