T.C. Summary Opinion 2002-68

UNITED STATES TAX COURT

RODNEY NOBLE AND JO MARIE PAYTON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7721-00S.          Filed June 10, 2002.

Rodney Noble and Jo Marie Payton, pro sese.

<u>Jean Song</u>, for respondent.

DEAN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

Respondent determined deficiencies in petitioners' 1995 and 1996 Federal income taxes of $14,789 and $12,112 respectively. The issues presented for decision are whether corporate distributions to Jo Marie Payton (petitioner) were loan repayments or constructive dividends for the years in issue and whether petitioners received imputed interest income for loans to petitioner's corporation.

Some of the facts have been stipulated and are so found. The exhibits received into evidence are incorporated herein by reference. At the time the petition in this case was filed, petitioners resided in Los Angeles, California.

## Background

Petitioner is a professional actress. She is the sole shareholder of Payton Power Productions, Inc. (PPP), which provides acting services. In 1995 and 1996, she served as PPP's president, secretary, and treasurer. Petitioner made all of PPP's financial decisions. At the end of the calendar year 1995 the capitalization of PPP consisted of common stock issued for $1,000 and debt of $601,150. At the end of 1996 total liabilities and stockholders' equity were $649,817 of which $1,000 was equity. "Loans from stockholders" as indicated on the corporate returns went from $409,225 in 1995 to $530,067 in 1996.

At no time during the years in issue did either PPP or petitioner execute notes articulating terms of a loan

arrangement. There is no evidence in the record that any loan terms were established. There is no payment schedule, no interest rate, nor any recourse for late-payments. PPP did not formally declare dividends in either 1995 or 1996.

The amount and nature of every distribution was determined solely by petitioner. In 1995 and 1996 petitioner made a variety of distributions including, among others, salary and expenses. Respondent audited PPP's returns for 1995 and 1996 and determined that it made the following payments to or on behalf of petitioner that were distributions with respect to her stock:

|  | 1995 | 1996 |
| --- | --- | --- |
| Taxes and licenses for Mercedes Benz | $1,467 | 0 |
| Auto expenses for Mercedes Benz | 2,031 | $4,596 |
| Auto insurance for Mercedes Benz | 2,966 | 0 |
| Payments for Mercedes Benz | 27,427 | 8,465 |
| Interest expense for Mercedes Benz | 1,747 | 3,882 |
| Health club dues | 0 | 1,263 |
| Home security | 630 | 0 |
| Total Payments | 36,268 | 18,206 |

PPP's records indicate it paid the costs for three cars. One of the cars, a 1994 Land Cruiser, is not at issue in this case. Each of the other two cars was a Mercedes Benz. In 1995, the first Mercedes was traded in for the second, a later model. During the audit, petitioners could not establish a business purpose or a business use for either Mercedes.

The parties agree that the following accurately represents the relevant portions of PPP's balance sheet for 1995 and 1996:

|                                  | 1995     | 1996     |
|----------------------------------|----------|----------|
| Distributions                    | $36,268  | $18,206  |
| Current Earnings and Profits     | 14,335   | 17,325   |
| Accumulated Earnings and Profits | (50,600) | (39,121) |
| Paid-in-capital (basis)          | 1,000    | 0        |
| Loans from stockholders[1]       | 123,645  | 120,842  |

[1] These amounts reflect the amounts "loaned" by petitioners to PPP for each tax year as reported on Schedule L, Balance Sheets per Books, on the respective year's Form 1120, U.S. Corporation Income Tax Return. These amounts are in addition to the $285,580 on PPP's books at the start of 1995.

## Discussion

<u>Bona Fide Debt</u>

It is respondent's contention that there is little evidence of "loans" from petitioner to PPP and that the payments in question, made to or on behalf of petitioners, must be treated as constructive dividends and taxed as ordinary income. Petitioners, however, claim that because PPP was indebted to petitioner in amounts in excess of the payments herein that they are entitled to treat the payments as loan repayments. Under such an interpretation, the payments would not constitute dividend income and would not be taxable as ordinary income of petitioners.

Generally, respondent's determination in a notice of deficiency is presumptively correct, and petitioners bear the burden of disproving the adjustments. Rule 142(a); <u>Falsetti v. Commissioner</u>, 85 T.C. 332, 356 (1985). However, under section 7491(a)(1), effective for court proceedings arising in connection

with examinations commencing after July 22, 1998, the burden of proof shifts to respondent if, among other requirements, petitioner introduces "credible evidence with respect to any factual issue relevant to ascertaining" her liability for the tax deficiency at issue. Even if we were to find that petitioner has met the requirements of section 7491(a)(1), respondent has presented sufficient evidence to meet his burden of proof.

We shall first consider the character of the transfers made by petitioners to PPP. For Federal income tax purposes, a transaction will be characterized as a loan if there was "an unconditional obligation on the part of the transferee to repay the money, and an unconditional intention on the part of the transferor to secure repayment". Haag v. Commissioner, 88 T.C. 604, 616 (1987), affd. without published opinion 855 F.2d 855 (8th Cir. 1988). What is important is the bona fide intent that the debt shall be repaid, rather than the name of the transaction or the form the transaction takes. Berthold v. Commissioner, 404 F.2d 119, 122 (6th Cir. 1968), affg. T.C. Memo. 1967-102; Patrick v. Commissioner, T.C. Memo. 1998-30, affd. without published opinion 181 F.3d 103 (6th Cir. 1999).

Petitioner testified that PPP and petitioners intended the payments made by PPP to be loan repayments. The mere declaration of intent, however, is not determinative without further evidence substantiating the existence of bona fide debt. See Turner v.

Commissioner, 812 F.2d 650, 654 (11th Cir. 1987), affg. T.C. Memo. 1985-159; Cordes v. Commissioner, T.C. Memo. 1994-377. A bona fide transaction is not invalidated by the mere fact that the arrangement of the transaction confers tax benefits upon the taxpayer. Gyro Engg. Corp. v. United States, 417 F.2d 437, 440 (9th Cir. 1969).

The Court of Appeals for the Ninth Circuit has identified some objective factors to consider in determining whether bona fide debt exists: (1) The names given to the certificates evidencing the indebtedness; (2) the presence or absence of a maturity date; (3) the source of the payments; (4) the right to enforce payment of principal and interest; (5) participation in management; (6) a status equal to or inferior to that of regular corporate creditors; (7) the intent of the parties; (8) "thin" or adequate capitalization; (9) identity of interest between creditor and stockholder; (10) payment of interest only out of "dividend" money; and (11) the ability of the corporation to obtain loans from outside lending institutions. Hardman v. United States, 827 F.2d 1409, 1412-1414 (9th Cir. 1987).

Each factor is not necessarily afforded equal significance nor is any particular factor determinative. Dixie Dairies Corp. v. Commissioner, 74 T.C. 476, 493-494 (1980). Not all of the factors articulated by the Ninth Circuit are relevant in each case. Id. The ultimate question is whether there was a "genuine

intention to create a debt, with a reasonable expectation of repayment, and did that intention comport with the economic reality of creating a debtor-creditor relationship?" Litton Bus. Sys., Inc. v. Commissioner, 61 T.C. 367, 377 (1973). Transactions between closely held corporations and their shareholders must be examined with special scrutiny. Elec. & Neon, Inc. v. Commissioner, 56 T.C. 1324, 1339 (1971), affd. without published opinion 496 F.2d 876 (5th Cir. 1974).

Although the factors offer an objective measure of the taxpayer's intent, we must examine them in light of all the relevant facts and circumstances. Estate of Chism v. Commissioner, 322 F.2d 956, 960 (9th Cir. 1963), affg. T.C. Memo. 1962-6. Petitioners must show that bona fide loans were created and that the payments they received were repayment of these loans. Welch v. Helvering, 290 U.S. 111, 114 (1933).

Here there is little tangible evidence that PPP and petitioners intended to create a bona fide debtor-creditor relationship. There is no written evidence substantiating the intentions of the parties, the rate of interest to be charged, any collateral for the "loan", or any right of petitioner to enforce payment from PPP. There is no evidence that the payments made by PPP to or on behalf of petitioner were the result of, or in satisfaction of, any established expectation of loan repayment.

A thinly capitalized corporation is strong evidence that loans are not bona fide debt.  This is especially true where a very high debt-to-equity ratio exists.  Gyro Engg. Corp. v. United States, supra at 439.  Here, the capitalization of PPP was at a debt-to-equity ratio of more than 600 to 1, a ratio which does not support the existence of loans as distinguished from capital contributions by petitioner to PPP.

Petitioner relies on a corporate resolution adopted in January 1996, which attempts to recharacterize any corporate deductions not allowed by the Commissioner as loan repayments. For a corporate resolution to be determinative for Federal income tax purposes, the company's actions must comport with the resolution.  See Turner v. Commissioner, supra at 654.  There are, however, no bookkeeping entries which indicate that the amounts at issue were intended as loan repayments.  Also, the corporate records do not indicate that these payments were repayments of loans.  The board's attempt to recharacterize the payments made in 1995 and 1996 was not reflected in the substance of any transaction.  By all indications, there is no expression of any intent on the part of petitioners to lend money to PPP or any obligation on the part of PPP to repay any purported loans. See Elec. & Neon, Inc. v. Commissioner, supra.

Essentially, there are only two indicia of a loan, petitioner's statements indicating her intentions, and PPP's

Federal income tax return, neither of which persuade the Court in the face of other evidence that a bona fide debt was created. Upon examination of the 11 factors, we find that the cash infusions from petitioners to PPP were contributions to capital, not loans. See sec. 351; Fin Hay Realty Co. v. United States, 398 F.2d 694 (3d Cir. 1968). In particular, the undercapitalization of the corporation, petitioner's control over the corporation, the fact that no dividends were declared, and the lack of loan documents satisfy the Court that there were no bona fide loans. Accordingly, we conclude that the payments made by PPP to or on behalf of petitioners were not repayments of bona fide debt.

Constructive Dividends

Having found the payments not to be loan repayments, we now address respondent's contentions that the payments made by PPP to or on behalf of petitioners are in the nature of constructive dividends.

Section 61(a)(7) includes the receipt of any dividend in a taxpayer's gross income. Section 301(a) requires that any distribution of "property" made by a corporation to a shareholder "with respect to its stock" shall be subject to dividend treatment for Federal income tax purposes. Secs. 301(c)(1), 316, 317.

The term "dividend" is defined in section 316(a) as:

any distribution of property made by a corporation to its shareholders--

> (1) out of its earnings and profits accumulated after February 28, 1913, or

> (2) out of its earnings and profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made.

Except as otherwise provided in this subtitle, every distribution is made out of earnings and profits to the extent thereof, and from the most recently accumulated earnings and profits. * * *

There is no requirement that the dividend be formally declared or even intended by the corporation. Loftin & Woodward, Inc. v. United States, 577 F.2d 1206, 1214 (5th Cir. 1978). Whether an expenditure is a constructive dividend is a question of fact for this Court.

It is well established that when a corporation uses its funds to pay personal expenses of its shareholders or members of shareholder's families, which bear no relation to the economic interests of the corporation, such payments constitute constructive dividends to the shareholders to the extent of earnings and profits. Melvin v. Commissioner, 88 T.C. 63, 79 (1987), affd. per curiam 894 F.2d 1072 (9th Cir. 1990); Falsetti v. Commissioner, 85 T.C. at 356; Challenge Manufacturing Co. v. Commissioner, 37 T.C. 650, 663 (1962); Am. Props., Inc. v.

Commissioner, 28 T.C. 1100, 1115 (1957), affd. per curiam 262 F.2d 150 (9th Cir. 1958).

To constitute a constructive dividend a corporate distribution to a shareholder must be both nondeductible to the corporation and must confer some economic benefit or gain to the shareholder. Palo Alto Town & Country Vill., Inc. v. Commissioner, 565 F.2d 1388, 1391 (9th Cir. 1977), affg. in part, revg. and remanding in part T.C. Memo. 1973-223; Falsetti v. Commissioner, supra at 357. Not every corporate expenditure conferring an economic benefit to the shareholder is a constructive dividend. The deciding factor is whether the expenditure was primarily for the shareholder's benefit and there was no expectation of repayment. Crosby v. United States, 496 F.2d 1384, 1388-1389 (5th Cir. 1974); Noble v. Commissioner, 368 F.2d 439 (9th Cir. 1966), affg. T.C. Memo. 1965-84.

Petitioners rely on the adoption of a corporate resolution dated January 15, 1996, stating that the board intends any amount of expenses which are disallowed by the Internal Revenue Service to be treated as repayment of shareholder loans. Petitioners' reliance on the corporate resolution is misplaced. The resolution was adopted after the 1995 tax year and was intended to recharacterize payments already made. The fact that there is no evidence of loan treatment on PPP's books vitiates the resolution. The resolution is merely an after-the-fact statement

of intent and does not control our decision.  See <u>Turner v. Commissioner</u>, 812 F.2d at 654; <u>Cordes v. Commissioner</u>, T.C. Memo. 1994-377.  Constructive dividends are more likely to originate from a closely held corporation where decisions between a single stockholder and the corporation are often one and the same. <u>Zhadanov v. Commissioner</u>, T.C. Memo. 2002-104.

Petitioner argues that she could not have received dividends from PPP for either 1995 or 1996 because PPP had deficits in its accumulated earnings and profits for both years.  Section 316 and its regulations provide that distributions to shareholders with respect to their stock must be treated as dividends to the extent of both current and accumulated earnings and profits.  "To the extent that a corporation has current earnings and profits as of the close of its taxable year, any distribution made in that year will be presumed to be made out of such current earnings and profits." <u>Brock v. Commissioner</u>, T.C. Memo. 1982-335; see sec. 316(a); sec. 1.316-1(a)(1), Income Tax Regs.  If the distributions for the year exceed the amount of current earnings and profits the excess is deemed to have been made out of any accumulated earnings and profits. <u>Prescott v. Commissioner</u>, T.C. Memo. 1983-709.  Any portion of the distribution that does not qualify for dividend treatment shall be applied against the shareholders' basis in their stock, and any excess shall be treated as gain.  Sec. 301(c).  Thus, petitioner was able to

receive constructive dividends because PPP had current earnings and profits in both 1995 and 1996. The distributions in excess of earnings and profits first reduce her basis in PPP's stock and second, are treated as capital gain for the respective years.

The distributions in question were for personal expenses such as the cost of petitioner's personal vehicles, home security, and health club dues. At trial, however, petitioner testified that she is entitled to the deductions for the Mercedes because she used the car for business purposes. When asked to identify how the Mercedes was used, petitioner indicated that it was used to "drive to work" and to attend "formal functions". She maintains that the use of the Mercedes helped her earn money and thus should be a deductible business expense. Despite petitioner's urging to the contrary, driving her vehicle from home to work and to receptions does not establish, by itself, a business use for that vehicle. See Fausner v. Commissioner, 413 U.S. 838 (1973); Commissioner v. Flowers, 326 U.S. 465 (1946); Feistman v. Commissioner, 63 T.C. 129, 134 (1974); secs. 1.162-2(e), 1.262-1(b)(5), Income Tax Regs. Since the corporate expenditures in question were solely for petitioner's benefit, she is taxable on the amounts distributed.

The evidence introduced by respondent supports the determination that the payments by PPP were made to or on behalf of petitioner and were constructive dividends. Petitioners have

failed to offer sufficient evidence to counter respondent's determination with respect to the payments from PPP. We hold, therefore, that the payments from PPP to petitioner in 1995 and 1996 were constructive dividends and are taxable, to the extent of earnings and profits, as ordinary income.

Imputed Interest Income

Respondent determined that petitioners have unreported imputed interest income under section 7872 resulting from petitioner's "loans" to the corporation. Section 7872, entitled "Treatment of loans with below-market interest rates", operates on the assumption that a bona fide debt is in existence. (Emphasis provided.) Although petitioners did not specifically address respondent's contention, because there were no loans, bona fide debt, or debtor-creditor relationship, we are unable to sustain respondent's determination.

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered

under Rule 155.