T.C. Summary Opinion 2009-12

UNITED STATES TAX COURT

ANTOINE HABER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11032-06S.              Filed January 22, 2009.

Antoine Haber, pro se.

<u>Carolyn A. Schenck</u>, for respondent.

GOLDBERG, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code (Code) in

effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

This case centers on the explanation of bank deposits that respondent determined to be unreported business income for 2003, and on the substantiation of business expense deductions. The record is voluminous; therefore, we provide an initial factual introduction to summarize the events leading up to the commencement of this case. Then in the background section, we summarize the events that evolved into the issues for decision.

## Introduction

Some of the facts have been stipulated and are so found. The stipulation of facts, the supplemental stipulations of facts, and the attached exhibits are incorporated herein by this reference. Petitioner resided in California when he filed his petition.

During 2003 petitioner operated two unincorporated businesses: A cabinetmaking business and a hair and beauty salon. He conducted the cabinetmaking business under the names "Production 2000" and "Cabinet 2000" and the hair salon under the name "Touche de Salon & Day Spa". Petitioner started the cabinetmaking business sometime in the 1990s. He purchased an existing hair salon around October 2000 and sold it in October or November 2003. At the time of trial petitioner was no longer working.

Petitioner reported the income and expenses for the two businesses on two separate Schedules C, Profit or Loss From Business, using the cash basis of accounting for both. For the cabinetmaking business he reported a loss of $11,732 on sales of $156,480, and for the hair salon he reported a profit of $9,417 on sales of $351,060.[1] Petitioner also recognized a capital gain of $76,465 when he sold the hair salon for $89,157.

In 2005 the IRS selected petitioner's 2003 income tax return for examination. Using the bank deposits method of determining income, the examiner found $128,595 in unexplained deposits in the Production 2000 bank account, which the IRS determined was unreported income. To arrive at that amount the examiner added up the deposits for the year, subtracted non-Schedule C deposits such as the proceeds from the sale of the hair salon, and then subtracted the taxable sales that petitioner had reported on Schedule C. In a similar manner, the examiner determined $3,014 in unreported income for the hair salon.

Regarding expenses for the cabinetmaking business, the examiner allowed an additional deduction of $9,099 for cost of goods sold material purchases and $41,982 in additional allowances for "Other expenses" summarized on line 27 of Schedule C. Pertaining to hair salon expenses, the examiner allowed an

---

[1]The Court rounded the amounts in this opinion to the nearest dollar.

additional deduction of $4,782 for advertising and $2,499 for cost of goods sold. The examiner disallowed $21,595 in "Other expenses" summarized on line 27 of Schedule C.

The combination of the above adjustments also caused mathematical changes to petitioner's self-employment tax and itemized deductions. The IRS issued a notice of deficiency dated March 27, 2006, determining a $35,485 increase to income tax and a $7,097 accuracy-related penalty. In June 2006 petitioner timely filed a petition with the Court, claiming that the IRS did not allow him sufficient time to explain the deposits and to prove his expenses.

## Background Leading to Issues for Decision

In 2007 in preparation for trial respondent served on petitioner's bank a subpoena for the production of records, through which respondent discovered a second bank account for the cabinetmaking business in the name of Cabinet 2000. Respondent also discovered that petitioner did not have a personal bank account and that he paid his personal expenses through his business accounts.

A week before trial the parties held their third pretrial conference, where they agreed on a stipulation of facts. Respondent reduced the additions to income, including conceding the entire $3,014 of additional income for the hair salon, because of interaccount transfers and other nontaxable deposits.

However, respondent's analysis of the Cabinet 2000 bank account determined additional unreported income such that petitioner had a total of $142,912 in unexplained deposits for the cabinetmaking business.

At calendar call petitioner presented respondent with additional documents, seeking to substantiate that almost all of the $142,912 was not income and to substantiate deductions in greater amounts than he had claimed on the Schedules C.

The Court commenced the trial on October 17, 2007, in Los Angeles. Petitioner and two other individuals testified on behalf of petitioner; namely, his tax return preparer and an enrolled agent. The IRS examiner testified for respondent. Respondent objected to the lateness and content of petitioner's new evidence, and to the testimony of the enrolled agent on grounds of authenticity, hearsay, and lack of foundation. Regarding the enrolled agent, respondent objected specifically that the agent did not participate in preparation of petitioner's return and that petitioner was offering the agent as an "expert" witness.

After completing the testimony regarding the adjustments determined in the notice of deficiency, the Court reserved judgment on respondent's objections, adjourned the proceedings, continued the case for further trial, and instructed the parties

to meet to review petitioner's new evidence and file a supplemental stipulation of facts.

About a week after the adjournment, after taking into account the income adjustments discussed above, respondent filed an answer in which he asserted a revised deficiency of $39,068, and a revised accuracy-related penalty of $7,814.  During the next few weeks, the parties met and respondent drafted a supplemental stipulation of facts, where they settled many of the disallowed deductions.  However, they continued to disagree on the taxability of the $142,912 in unexplained deposits, and they continued to disagree on many of the new deduction amounts.  On November 29, 2007, in Washington, D.C., petitioner signed the supplemental stipulation of facts, the parties completed testimony and cross-examination regarding the new deductions, and the Court concluded the trial.

After all the concessions, the issues for decision are:  (1) A ruling on respondent's objections, (2) whether petitioner had unreported taxable receipts, (3) whether petitioner is entitled to deductions for the business expenses that remain in dispute, and (4) whether petitioner is liable for the accuracy-related penalty.

## Discussion

In general, the Commissioner's determination set forth in a notice of deficiency is presumed correct, and the taxpayer bears

the burden of showing that the determination is in error.  Rule 142(a)(1); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).  Under section 7491(a), the burden may shift to the Commissioner regarding a factual issue if the taxpayer produces credible evidence and meets the other requirements of the section, including maintaining records required by the Internal Revenue Code and cooperating fully with the Secretary's reasonable requests for witnesses, information, documents, meetings, and interviews.  Petitioner did not fulfill the requirements of section 7491(a), and therefore the burden of proof regarding the additional business deductions remains on petitioner.  With respect to the increased deficiency that respondent asserted, the burden of proof is on respondent.  Rule 142(a)(1); <u>Shea v. Commissioner</u>, 112 T.C. 183, 190-191 (1999); <u>Wayne Bolt & Nut Co. v. Commissioner</u>, 93 T.C. 500, 507 (1989).  Regarding penalties and additions to tax section 7491(c) places the burden of production on respondent.

## I.  <u>Ruling on Respondent's Evidentiary Objections</u>

In general, the Court conducts trials in accordance with the rules of evidence for trials without a jury in the U.S. District Court for the District of Columbia and accordingly follows the Federal Rules of Evidence.  Sec. 7453; Rule 143(a); <u>Clough v. Commissioner</u>, 119 T.C. 183, 188 (2002).  However, Rule 174(b) and section 7453 carve out an exception for trials of small tax

cases.  Under this exception, the Court conducts small tax cases as informally as possible and consequently may admit any evidence that the Court deems to have probative value.  Schwartz v. Commissioner, 128 T.C. 6, 7 (2007).

The copies of canceled checks and other documents that petitioner offered as new evidence, as well as the testimony of the enrolled agent, have probative value regarding petitioner's business income and deductions.  Therefore, sufficient grounds exist to overrule respondent's evidentiary objections.

II.  Unexplained Bank Deposits of Cabinetmaking Business--
     $142,912

In cases of unreported income the Court of Appeals for the Ninth Circuit, to which an appeal would ordinarily lie if this case were appealable, requires that the Commissioner provide a minimal evidentiary foundation connecting the taxpayer with the unreported income before the presumption of correctness attaches to the Commissioner's determination.  See Hardy v. Commissioner, 181 F.3d 1002, 1004 (9th Cir. 1999), affg. T.C. Memo. 1997-97; Weimerskirch v. Commissioner, 596 F.2d 358, 360-361 (9th Cir. 1979), revg. 67 T.C. 672 (1977); Petzoldt v. Commissioner, 92 T.C. 661, 687-691 (1989).  Once the Commissioner has met this initial burden, the taxpayer must establish by a preponderance of the evidence that the Commissioner's determination is arbitrary or erroneous.  See Hardy v. Commissioner, supra at 1004.

Section 6001 requires taxpayers to maintain books and records adequate to determine their tax liability. Where a taxpayer fails to keep adequate records, section 446(b) authorizes the Commissioner to reconstruct the taxpayer's income using a method that accurately determines the income. Courts have long sanctioned the Commissioner's use of the bank deposits method to reconstruct income. Goe v. Commissioner, 198 F.2d 851 (3d Cir. 1952), affg. a Memorandum Opinion of this Court. While not conclusive, bank deposits are prima facie evidence of income. Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); Estate of Mason v. Commissioner, 64 T.C. 651, 656 (1975), affd. 566 F.2d 2 (6th Cir. 1977). Ordinarily, after the Commissioner has determined that unexplained deposits constitute income, the taxpayer has the burden of proving such determinations are erroneous. Rule 142(a); Welch v. Helvering, supra; Nicholas v. Commissioner, 70 T.C. 1057, 1064 (1978); Harper v. Commissioner, 54 T.C. 1121, 1129 (1970). However, in this instance, with respect to the unexplained deposits in the second bank account, because these deposits are the basis for respondent's assertion of an increased deficiency, the burden of proof remains with respondent. Shea v. Commissioner, supra at 190-191; Wayne Bolt & Nut Co. v. Commissioner, supra at 507.

A loan is an agreement that is either express or implied, where one person advances money to the other and the other agrees

to repay the advance with terms including the repayment period and the interest rate. Welch v. Commissioner, 204 F.3d 1228, 1230 (9th Cir. 2000), affg. T.C. Memo. 1998-121. Because the receipt of money pursuant to a loan is offset by a corresponding obligation to repay, the proceeds of a loan are not includable in income. Commissioner v. Tufts, 461 U.S. 300, 307 (1983). For a bona fide loan to exist the parties must have had an actual intent to establish a debtor-creditor relationship at the time of advancing the funds. Estate of Chism v. Commissioner, 322 F.2d 956, 960 (9th Cir. 1963), affg. Chism Ice Cream Co. v. Commissioner, T.C. Memo. 1962-6; Fisher v. Commissioner, 54 T.C. 905, 909-910 (1970). The specific facts and circumstances determine whether the parties intended to establish a debtor-creditor relationship. Estate of Chism v. Commissioner, supra at 960; Fisher v. Commissioner, supra at 910.

The Court of Appeals for the Ninth Circuit considers seven factors to determine whether a debtor-creditor relationship existed, with no single factor being determinative. Welch v. Commissioner, supra at 1230. The factors are: (1) Whether a note or other instrument evidenced the promise to repay; (2) whether the lender charged interest; (3) whether the parties established a fixed schedule for repayment; (4) whether the borrower provided collateral to secure payment; (5) whether the borrower made repayments; (6) whether the borrower had a

reasonable prospect of repaying the loan and whether the lender had sufficient funds to advance the loan; and (7) whether the parties conducted themselves as if the transaction was a loan.

Petitioner contends that two nontaxable loans gave rise to almost all of the unexplained deposits: $69,000 from a line of credit and $73,000 from a business colleague, for a total of $142,000. Below, we discuss petitioner's contentions.

A.  Line of Credit Borrowing of $69,000

To substantiate the $69,000 borrowing, petitioner offered into evidence his two-page "Account Transaction History", dated March 2, 2004, from his bank showing that a $100,000 line of credit was available to petitioner from March 2000 at an interest rate of 4.54 percent. Pertinent here, the listing shows that petitioner borrowed $69,000 on March 20, 2003. Petitioner provided no other documentation regarding the $69,000. The transaction history shows that on May 16, 2003, petitioner made or received a principal reduction of $31,481 but otherwise shows only minor repayments.

Review of petitioner's bank statements and individual deposits establishes that petitioner did not deposit the $69,000 into the cabinetmaking business bank account during 2003. Petitioner testified that he might have deposited the $69,000 into the bank account of US Hospitality Services, Inc.

(Hospitality, Inc.).  Therefore, the $69,000 could not have been and was not part of the unexplained deposits.

B.  Funds From a Business Colleague--$73,000

In December 2003 petitioner deposited into the Production 2000 bank account two checks totaling $73,000 from Hospitality, Inc.  Petitioner signed the first check, which was No. 103, for $50,000, dated December 1, 2003, and payable to Production 2000. Petitioner also signed the second check, which was No. 108, for $23,000, dated December 11, 2003, and payable to himself.  The address printed on the two Hospitality, Inc. checks is the same address as petitioner's cabinetmaking business location.

Mike Chatham individually, or with his ex-wife, owned Hospitality, Inc.  Petitioner met Mr. Chatham around 2001 or 2002 when Mr. Chatham was managing a renovation project at Century Plaza Hotel.  Mr. Chatham started using a desk in petitioner's cabinetmaking business office in March 2003 to receive mail and telephone messages and to fulfill other business needs. Petitioner testified that when Mr. Chatham was away, he had Mr. Chatham's permission to access and sign Hospitality, Inc. checks.

Petitioner and Mr. Chatham never drafted a formal loan agreement.  Instead, they wrote a few words on a piece of paper simply documenting petitioner's receipt of $73,000.  Petitioner lost the piece of paper.  To substantiate that the $73,000 was bona fide indebtedness, petitioner relies mainly on his own

testimony and a notarized one-page declaration from Mr. Chatham, together with an undated two-page exhibit listing purported repayments.

Courts have long established that we need not accept a taxpayer's testimony in the absence of corroborating evidence. Geiger v. Commissioner, 440 F.2d 688, 689-690 (9th Cir. 1971), affg. per curiam T.C. Memo. 1969-159; Niedringhaus v. Commissioner, 99 T.C. 202, 212 (1992). The declaration that Mr. Chatham signed does not, without additional evidence, establish the existence of a bona fide debt. See Turner v. Commissioner, 812 F.2d 650, 654 (11th Cir. 1987), affg. T.C. Memo. 1985-159; Cordes v. Commissioner, T.C. Memo. 1994-377. The declaration dated August 8, 2007, was not a contemporaneous document, did not state that the $73,000 was a loan, did not mention an interest rate, and did not discuss collateral. Further, Mr. Chatham did not provide his address or telephone number, petitioner did not call Mr. Chatham as a witness, and petitioner did not comply with respondent's request for Mr. Chatham's contact information. Similarly, the exhibit attached to the declaration does not indicate when or by whom or under what circumstances the listing was prepared. Petitioner acknowledged that some of the payments were for his own business or personal expenses. Moreover, petitioner provided no canceled checks or other documentation showing the purpose of the payments on the listing.

Respondent sought to establish that Hospitality, Inc., was a related party to petitioner.  Petitioner testified that he was not affiliated with the business and he did not have any ownership interest in Hospitality, Inc.  The Court received into evidence from respondent a copy of the Cabinet 2000 Web site homepage, which contained a hyperlink to "US Hospitality".  When respondent questioned petitioner about the link, petitioner responded that he commissioned the Cabinet 2000 Web site in 2006 and the link was actually to US Hospitality, L.L.C., not to Hospitality, Inc.  Presently, no Web site exists for Hospitality, Inc., but a review of the Web site for US Hospitality, L.L.C., confirmed a relationship to petitioner's Cabinet 2000 business.

We find it particularly strange that petitioner signed the two checks from another corporation's bank account; namely, Hospitality, Inc.  All of this suggests that petitioner was not forthcoming about his relationship with Mr. Chatham or the reasons for the transaction.

In summary, through the bank deposits method analysis, respondent  met his burden under Rule 142(a) for establishing an increased deficiency, and respondent met his burden under the standard set by the Court of Appeals for the Ninth Circuit for determining whether a debtor-creditor relationship existed. Petitioner, however, did not establish that his receipt of $73,000 was bona fide indebtedness related to a debtor-creditor

relationship.  For all the foregoing reasons, we sustain respondent's determination that petitioner had $142,912 in unreported taxable receipts in 2003.

III.  Business Expense Deductions Remaining in Dispute

Deductions are a matter of legislative grace, and taxpayers bear the burden of proving their entitlement to a deduction. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  Section 6001 requires taxpayers to maintain records sufficient to establish the amount of each deduction.  See also sec. 1.6001-1(a), (e), Income Tax Regs.  Taxpayers may deduct only the business expenses that they can substantiate.  Ronnen v. Commissioner, 90 T.C. 74, 102 (1988).

Cost of goods sold is an offset to gross receipts in determining gross income.  Metra Chem Corp. v. Commissioner, 88 T.C. 654 (1987); Nunn v. Commissioner, T.C. Memo. 2002-250; Wright v. Commissioner, T.C. Memo. 1993-27; sec. 1.61-3(a), Income Tax Regs.  Thus, the Code does not treat costs of goods sold as deductions from gross income, and they are not subject to the limitations on deductions contained in sections 162 and 274. See Metra Chem Corp. v. Commissioner, supra; B.C. Cook & Sons, Inc. v. Commissioner, 65 T.C. 422, 428 (1975), affd. per curiam 584 F.2d 53 (5th Cir. 1978); Nunn v. Commissioner, supra; secs. 1.61-3(a), 1.162-1(a), 1.471-3, Income Tax Regs.  Nonetheless,

taxpayers must substantiate the amount they claim as cost of goods sold, and they must maintain sufficient records for this purpose. Sec. 6001; Nunn v. Commissioner, supra; Wright v. Commissioner, supra; sec. 1.6001-1(a), Income Tax Regs.

A taxpayer may deduct ordinary and necessary expenses that he or she pays in connection with the operation of a trade or business. Sec. 162(a); Boyd v. Commissioner, 122 T.C. 305, 313 (2004). To be "ordinary" the expense must be of a common or frequent occurrence in the type of business involved. Deputy v. du Pont, 308 U.S. 488, 495 (1940). To be "necessary" an expense must be "appropriate and helpful" to the taxpayer's business. Welch v. Helvering, 290 U.S. at 113. Additionally, the expenditure must be "directly connected with or pertaining to the taxpayer's trade or business". Sec. 1.162-1(a), Income Tax Regs. Section 262(a) disallows deductions for personal, living, or family expenses.

If a taxpayer establishes that an expense is deductible but is unable to substantiate the precise amount, we may estimate the amount, bearing heavily against the taxpayer whose inexactitude is of his own making. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). The taxpayer must present sufficient evidence for the Court to form an estimate because without such a basis, any allowance would amount to unguided largesse. Williams

v. United States, 245 F.2d 559, 560-561 (5th Cir. 1957); Vanicek

v. Commissioner, 85 T.C. 731, 742-743 (1985).

A.   Expenses for the Cabinetmaking Business

We provide the table below to show the evolution of the

eight business expenses that remain in dispute pertaining to the

cabinetmaking business, and then we discuss the individual

expenses.

| Cabinetmaking Business | Amount on Tax Return | Adjustment Per Notice of Deficiency | Addtl. Amount Claimed | Amount Remaining in Dispute |
|---|---|---|---|---|
| Cost of goods sold: | | | | |
|   Labor | $45,351 | -0- | $2,700 | $2,700 |
|   Materials | 43,731 | +$9,099 | 16,473 | 16,473 |
| Bank charges | -0- | -0- | 224 | 224 |
| Office supplies | 883 | -0- | 165 | 165 |
| Rent | 16,400 | -0- | 4,296 | 4,296 |
| Property taxes | 4,192 | -0- | 341 | 341 |
| Telephone | 888 | -0- | 1,195 | 666 |
| Utilities | -0- | -0- | 5,630 | 1,360 |

1.   Cost of Goods Sold--Labor--$2,700

Petitioner reported $45,351 in labor expenses on his

Schedule C, which the IRS allowed in full.  Petitioner now seeks

to deduct $2,700 in additional labor expenses, offering as

substantiation four canceled checks written to four separate

individuals and totaling $2,700.  Each check contains a notation

in the memo line:  Two checks have words that reference specific

work projects, and the other two checks have the notations "Help"

and "Help at work".  One of the individuals also worked for

Hospitality, Inc.  Petitioner did not provide a Form W-2, Wage and Tax Statement, reporting for any of the four individuals, and he did not offer any Forms 1099-MISC, Miscellaneous Income, to show that he reported these payments to the IRS.

In petitioner's business, commercial cabinetmaking, hiring occasional project labor is ordinary and necessary.  Respondent accepted in full the amount petitioner claimed on his tax return, indicating accuracy, and the revelation of a second bank account with additional business receipts and payments makes it credible that petitioner would have additional labor expenses.  The notations on the checks also indicate that the payments were for work-related project labor.  The fact that one of the laborers also worked for Hospitality, Inc., does not seem significant.  Hospitality, Inc., shared office space with petitioner's cabinetmaking business, and it is plausible they would use some of the same laborers.

Respondent made broad assertions that petitioner did not distinguish his business versus personal expenses and that petitioner did not provide accounting records to support the labor expenses.  However, for these particular labor expenses respondent did not refute petitioner's specific evidence regarding the canceled checks.  Therefore, petitioner is entitled to $2,700 in additional labor expenses.

## 2.  Cost of Goods Sold--Materials--$16,473

On his Schedule C petitioner reported $43,731 in cost of goods sold material purchases.  The IRS allowed the amount in full plus an additional $9,099.  To support his request for an additional amount, petitioner submitted 29 canceled checks totaling $16,473.  These checks showed payees reflecting mostly material purchases from businesses such as Calif. Panel & Veneer Co., E.B. Bradley Co. (a wholesale distributor of woodworking supplies), and Anderson Saw Co., Inc.  Two of the checks showed that petitioner paid for subcontract labor and electrical work.  A third check for $52 had "USH" written as a notation, and petitioner acknowledged that he had paid this amount on behalf of Hospitality, Inc.  Otherwise, the check notations were blank, referenced invoice numbers, or noted the names of work projects.

Purchases of wood and hardware and payments to subcontractors are ordinary and necessary expenses for a commercial cabinetmaker.  The late discovery of the second bank account makes additional expenses plausible.  The project- and invoice-related notations on the memo lines of the checks add to the credibility of the business purpose of the purchases.

Respondent made general statements about petitioner's failure to produce accounting records and to segregate business from personal expenses.  However, the record does not show that petitioner was conducting a personal project or that the IRS

examiner previously allowed these specific purchases in the $9,099 of allowances in the notice of deficiency. Therefore, petitioner is entitled to $16,421 ($16,473 minus the $52 he paid on behalf of Hospitality, Inc.) for his supplemental material purchases.

### 3. Bank Charges--$224

Petitioner did not claim a deduction for bank charges on his tax return, but he now seeks a deduction of $224. To substantiate his claim, petitioner provided bank statements from the Cabinet 2000 account that list monthly service charges and a printing charge for new checks totaling $224.

Bank charges are an ordinary and necessary business expense. Respondent established that petitioner paid his personal expenses through his business checking accounts. Petitioner did not show or even attempt to show the percentage of business use. Because the inexactitude is of petitioner's own making, we rely on Cohan v. Commissioner, 39 F.2d at 543-544, and attribute one-half of the bank charges to petitioner's personal use. Accordingly, petitioner may deduct $112, which is one-half of the $224 total bank charges.

### 4. Office Supplies--$165

On his tax return petitioner deducted $883 in office supply expenses, which the IRS allowed in full. Petitioner seeks to deduct an additional $165 in office supplies by providing five

checks totaling $165.  The checks had payees such as the U.S. post office, Sparkletts (bottled water), and Office Max.  One of the checks, for $46, contained a notation in the memo line indicating that it was for Cabinet 2000.

While office supplies are an ordinary and necessary expense, as noted above, petitioner paid for personal expenses through his business accounts.  Other than the $46 check, petitioner has not established the business use of the office supplies.  Under Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930), we estimate that one-half of the remainder was for business use.  Consequently, petitioner may deduct $105.50 as a supplemental deduction for office supplies determined as follows:  $46 plus $59.50, the latter figure equaling one-half of $165 minus $46.

### 5.  Rent--$4,296

Petitioner deducted rent expenses of $16,400 on his tax return, which the IRS allowed in full.  As part of the additional documents, petitioner presented three checks, each for $1,432, totaling $4,296.  The checks were dated January 1, March 23, and April 28, 2003, respectively, and were all payable to the Metropolitan Transport Authority.  One check had no notation, and the other two referenced invoice numbers.

Rent is an ordinary and necessary expense.  Respondent did not show that any of these three specific payments was part of the $41,982 in additional "other" expenses that the IRS allowed

as a result of the audit. On the basis of the three checks, we conclude that petitioner's base monthly rent was $1,432. Because petitioner continued in his cabinetmaking business location until 2006, it seems probable that the Metropolitan Transportation Authority would have enforced petitioner's monthly rent obligation during 2003. Because neither side produced evidence to the contrary, we apply Cohan v. Commissioner, supra, to conclude petitioner paid 12 months of rent at $1,432 per month, which totals $17,184. Since respondent has already allowed a deduction of $16,400, petitioner may deduct the difference, $784 ($17,184 minus $16,400) as an additional rent expense.

### 6. Property Taxes--$341

Petitioner deducted $4,192 in property taxes on his tax return, which the IRS allowed in full. Petitioner seeks an additional property tax deduction by providing two canceled checks totaling $341. Both checks were payable to the Los Angeles County Tax Collector. One check had no description on the memo line, and the other referenced a bill number.

Petitioner's business and residence were both in Los Angeles County. Petitioner did not provide evidence that these two payments were for his cabinetmaking business as opposed to his residence. As a result, petitioner may not deduct an additional expense for property taxes.

7.  Telephone--$666

Petitioner claimed $888 in telephone expenses on his return, which the IRS allowed in full.  As part of the additional documents, petitioner provided 15 checks totaling $1,195 and payable to the following four different telephone carriers: AT&T, Pacific Bell, SBC California, and Verizon.  Respondent allowed $529 of these additional payments where the notation line contained a reference to petitioner's business telephone number.  Respondent did not allow the remaining $666 of expense because: The telephone number on the memo line was not for petitioner's business; the payee was Verizon, which was the carrier for petitioner's home telephone line; or the memo line on the check contained no notation, making it unclear whether the expense was business or personal.  Section 262(b) disallows a deduction for the first telephone line provided at a taxpayer's residence.

Thus, in sum respondent has allowed $1,417 ($888 plus $529) in telephone expense deductions, or 68 percent of petitioner's total claim of $2,083 ($888 plus $1,195).  Regarding the remaining $666, petitioner provided no substantiation showing business use, and we find no grounds to decide a higher percentage than respondent has already allowed.  For the foregoing reasons, petitioner may not deduct any of the $666 in telephone expenses that remain in dispute.

8. <u>Utilities--$1,360</u>

Petitioner claimed no utility expense deduction on his tax return. However, in the additional documents petitioner provided respondent with copies of canceled checks that totaled $5,630 for water, sewer, and electric payments. Respondent allowed all of these payments, except for seven payments totaling $1,360, all payable to the LA Department of Water and Power.

Respondent disallowed these particular payments because notations on the memo lines showed three different account numbers. Thus, some of the payments may have been for petitioner's residence. Petitioner did not provide copies of the bills or any other documentation substantiating the business versus personal use.

Because petitioner made payments on two accounts in March, April, and May, and because of petitioner's lack of documentation, we apply <u>Cohan v. Commissioner</u>, <u>supra</u>, to conclude that petitioner may deduct $680, which is one-half of the $1,360 in utility expenses remaining in dispute.

B. <u>Expenses for the Hair Salon</u>

Below is a table that details the evolution of the four expenses that remain in dispute pertaining to the hair salon. Below the table we discuss each of the expenses.

| Hair Salon | Amount on Tax Return | Adjustment Per Notice of Deficiency | Addtl. Amount Claimed | Amount Remaining in Dispute |
|---|---|---|---|---|
| Bank charges | $5,513 | ($5,369) | $280 | $5,649 |
| Maintenance | 3,225 | (3,225) | 3,035 | 190 |
| Rent | 3,875 | (3,875) | 17,737 | 21,612 |
| Property taxes | 4,375 | (4,375) | 206 | 4,581 |

### 1.  Bank Charges--$5,649

Petitioner deducted $5,513 in bank charge expense on his tax return.  The IRS allowed $144.  Petitioner now seeks a revised deduction of $5,793, which leaves $5,649 in dispute ($5,793 - $144).

To support his claim, petitioner provided copies of 11 months of bank statements (January through the beginning of November; petitioner sold the business in October).  The statements showed daily deposits of the hair salon's cash and credit card receipts.  The bank labeled the cash receipts simply as deposits and the credit card receipts as "Mtot" (merchant account total batch) deposits.  After each Mtot deposit the bank recorded a corresponding bank charge also labeled Mtot, usually about 1.51 percent of the credit card deposit amount.  The bank statements also showed three other types of charges:  Mtot discounts, settlement charges, and merchant fees.  Petitioner's enrolled agent testified that these types of charges were typical of the fees that the various credit card companies charge.

Petitioner totaled all four types of bank charges to arrive at $5,793.

Bank charges are an ordinary and necessary expense. Respondent disallowed the charges because petitioner did not submit the underlying agreements with the credit card companies or his bank and because some of the Mtot charges do not appear linked to any particular credit card deposit.

We find that the bank statements are sufficient substantiation. The reference numbers, dates, and types of charges corresponded to the hair salon's credit card use, noting that different credit card companies charge varying amounts. Therefore, on the basis of the foregoing, petitioner is entitled to deduct an additional $5,649 for bank charges, which is the $5,793 in total charges less the $144 that respondent has already allowed.

### 2. Maintenance--$190

Petitioner deducted $3,225 in maintenance expenses on Schedule C, which the IRS disallowed entirely. Petitioner presented copies of canceled checks totaling $3,035, which respondent allowed in full. In a posttrial brief petitioner conceded the remaining $190 ($3,225 - $3,035).

### 3. Rent--$21,612

Petitioner deducted $3,875 in rent expenses on his tax return. The IRS disallowed the entire amount because petitioner

did not provide supporting documentation. In the supplemental stipulation of facts, petitioner stated that he was seeking a $36,000 deduction on the basis of the monthly rent expense of $3,000. However, in additional documents, petitioner presented copies of eight canceled checks totaling $21,612, which petitioner now claims is the correct rent expense for the year.

The payee on each of the eight checks was "Harry" or Gary Hindoyan or was left blank, but the bank cashed the checks anyway. Petitioner stated that Harry was the brother of the landlord, Gary Hindoyan, and was a coowner of the property. All eight checks cleared through the identical bank account number and all the checks were for $3,000, except for one check which was for $612. Petitioner stated that the $612 check was a prorated amount because he sold the salon during the year and was vacating the premises.

To further support his rent expense, petitioner provided a one-paragraph notarized declaration dated October 14, 2007, from Gary Hindoyan. The declaration, which included at the top Mr. Hindoyan's address and telephone number, stated that petitioner was his tenant and that petitioner paid $3,000 as monthly rent during the duration of his occupancy, from October 2000 to October 2003.

Rent is an ordinary and necessary expense. Respondent's primary argument is that petitioner did not adequately

substantiate the rent expense because: Petitioner provided only canceled checks, i.e., no lease agreement; the checks have varying payees and some have no payees; and petitioner did not call the landlord as a witness.

We find that petitioner adequately explained the payees, especially where all the checks cleared through the same bank account. Further, the landlord's declaration, unlike Mr. Chatham's discussed above, provide contact information. Moreover, the landlord's name appears on the property tax bills discussed below. We conclude that petitioner's substantiation was sufficient, and therefore petitioner may deduct $21,612 in rent expense.

### 4. Property Taxes--$4,581

Petitioner deducted $4,375 in property taxes on his tax return, which the IRS disallowed entirely because petitioner did not provide supporting documentation. Petitioner presents three canceled checks totaling $4,581, which he claims is his correct property tax expense for the year. The first two checks were each for $2,181: One was payable to Gary Hindoyan, and the other had no payee. Both checks cleared through the identical bank account, the same one as the rent checks. The third check was payable to the Los Angeles Tax Collector for $219. Petitioner and the enrolled agent testified that the $219 payment was for personal property taxes on equipment in the hair salon.

To further support his claim, petitioner provided a copy of a contemporaneous tax bill, addressed to his landlord care of the Hindoyan Trust, at 535 South Lake Avenue, for property at the address 546 South Lake Avenue. The bill showed two installment payments due for $6,813 each. Petitioner explained that the building contained three businesses, his was in the middle, and the landlord prorated the tax bill among the three tenants on the basis of the square footage.

Respondent denied the deduction because: petitioner did not provide a copy of the lease agreement; petitioner's residence was in Los Angeles County; and the address on the bill was slightly different from the address of petitioner's hair salon, which was 548 South Lake Avenue.

Petitioner has adequately substantiated the property tax expense. The following evidence was particularly persuasive: The property tax bill to Mr. Hindoyan; petitioner's testimony regarding the triple net lease, the layout of the building, and the proration of the taxes; and petitioner's and the enrolled agent's testimony regarding the personal property tax bill. For the foregoing reasons, petitioner may deduct property taxes of $4,581.

IV. Accuracy-Related Penalty

Taxpayers may be liable for a 20-percent penalty on the portion of an underpayment of tax attributable to negligence or

disregard of rules or regulations or to a substantial understatement of income tax.  Sec. 6662(a) and (b)(1) and (2).

Negligence is a failure to make a reasonable attempt to comply with the provisions of the Code.  The taxpayer is required to prove he acted with due care.  Sec. 6662(c); Collins v. Commissioner, 857 F.2d 1383, 1386 (9th Cir. 1988), affg. Dister v. Commissioner, T.C. Memo. 1987-217; sec. 1.6662-3(b)(1), Income Tax Regs.  Negligence penalties do not apply where the taxpayer shows that he had reasonable cause and acted in good faith.  Sec. 6664(c)(1).  The determination depends on the facts and circumstances of each case and includes the knowledge and experience of the taxpayer and the reliance on the advice of a professional, such as an accountant.  Sec. 1.6664-4(b)(1), Income Tax Regs.  Most important in this determination is the extent of the taxpayer's effort to determine the proper tax liability.  Id.

A substantial understatement of income tax occurs if the amount of the understatement exceeds the greater of 10 percent of the tax required to be shown in the return or $5,000.  Sec. 6662(d)(1)(A).  The amount of the understatement is reduced where the taxpayer had substantial authority for the tax treatment, or where the taxpayer adequately disclosed the relevant facts and the taxpayer had a reasonable basis for the tax treatment.  (Sec. 6662(d)(2)(B).

Respondent has met his burden of production by establishing that petitioner maintained his books and records in a negligent manner and that mathematically petitioner substantially understated his income tax. Petitioner asserts that the original figures he supplied to his tax return preparer were wrong because he had a new bookkeeper who made mistakes. Petitioner also alleges that he had forgotten about the Cabinet 2000 bank account and that his recent divorce had diverted his attention.

These reasons are not sufficient to establish reasonable cause for inadequate recordkeeping. See <u>LeBouef v. Commissioner</u>, T.C. Memo. 2001-261. We sustain respondent on the accuracy-related penalty.

<u>Conclusion</u>

To reflect our disposition of the issues,

<u>Decision will be entered under Rule 155</u>.